**NOT FOR PUBLICATION**                                                    [10]


## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
                                              :
ABRAHAM SAMUKAI,                              :        Civil Action No. 06-1370
                                              :
          Plaintiff,                          :           **OPINION**
     v.                                       :
                                              :
EMILY FISHER CHARTER SCHOOL OF :
ADVANCED STUDIES, DALLAS                      :
DIXON, and ROSE CARROLL,                      :
                                              :
          Defendants.                         :
_____:


**WOLFSON, UNITED STATES DISTRICT JUDGE**

        Plaintiff Abraham Samukai ("Plaintiff") has brought this action under 42 U.S.C. § 1981

and 42 U.S.C. § 1983, alleging that Defendants, Emily Fisher Charter School of Advanced

Studies, Dallas Dixon, and Rose Carroll demoted and terminated him based on his race and

national origin and in retaliation for his complaints of racial discrimination, in violation of the

First and Fourteenth Amendments.[1]  Before the Court is the motion of the Individual Defendants,

Dallas Dixon and Rose Carroll ("Individual Defendants"), to dismiss for lack of subject matter

_____

        [1]In addition to Plaintiff's claims under 42 U.S.C. § 1981 and 42 U.S.C. § 1983, Plaintiff's
originally-filed Complaint included two counts under the New Jersey Law Against
Discrimination (LAD) and one count of breach of contract.  However, the LAD and breach of
contract claims were not included in the Amended Complaint that was filed on June 26, 2006,
and accordingly, the Court notes that the LAD and breach of contract claims are no longer in the
case.

jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1), and for failure to state a claim upon which

relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6). Alternatively, the Individual

Defendants seek summary judgment, pursuant to Fed. R. Civ. P. 56(c), on Plaintiff's claims

against them.[2] The Individual Defendants allege that the arbitration clause in the employment

contract signed by Plaintiff precludes him from bringing his Section 1981 and 1983 claims in

court. For the reasons set forth below, the Court finds that the arbitration clause in Plaintiff's

employment contract does not waive his right to a judicial forum for his Section 1981 and 1983

claims, and the Individual Defendants' motion to dismiss is therefore denied.

## I.     BACKGROUND

Plaintiff was hired by Defendant Emily Fisher Charter School of Advanced Studies

("EFCS") in September 2002. On July 17, 2003, Plaintiff signed a four-year employment

contract with EFCS that included the following dispute resolution provision:

> All disputes between employees shall be handled in the following progressive
> manner, which shall be strictly confidential. Confidentiality is defined as
> restricting information about the dispute to only those individuals directly
> involved in the matter. An employee confidentiality agreement shall be deemed
> part of this contract.
>
> 1.     The parties shall first try to resolve the matter directly among themselves.
> 2.     The parties shall then mutually choose another employee to mediate the
>        matter.
> 3.     The mediator shall present his findings to the Headmaster or his/her
>        designee. The Headmaster or his/her designee shall join the mediation.

---

[2]Although the Individual Defendants titled their motion as a Motion to Dismiss for Lack
of Subject Matter Jurisdiction and for Failure to State a Claim, the Individual Defendants
asserted therein that the motion should be considered a motion for summary judgment based on
the material outside the pleadings that they attached to the motion. The Court therefore
understands the Individual Defendants to be moving for a dismissal or, in the alternative, for
summary judgment. For the reasons discussed below, the Court will construe the instant motion
as a motion to dismiss and decide it accordingly.

4.      If all attempts to mediate the matter are unsuccessful, all employees agree that they will enter binding arbitration to be conducted by a three member committee consisting of a member chosen by the Headmaster, one member chosen by the employee who is the subject of the dispute, and a third member chosen by the aforementioned two members.

5.      This section means that all matters of dispute shall be resolved within these procedures.

Ex. B, Cert. of Abraham Samukai.

Plaintiff, who is black and whose national origin is Liberian, alleges that he was demoted by Dallas Dixon, the executive director of EFCS, and Rose Carroll, the human resources coordinator of EFCS, from a position as an account payable official to various security aide, clerical, and janitorial positions based on his race and national origin. Plaintiff also alleges that after complaining to Mr. Dixon and Ms. Carroll that he was being discriminated against because of his race and national origin, he was terminated by Mr. Dixon, on January 2, 2006, in retaliation for his complaints and because of his race and national origin. Plaintiff further alleges that, following his termination by Mr. Dixon, Plaintiff wrote to the Board of EFCS, requesting that the Board correct Mr. Dixon's discriminatory and retaliatory actions. However, according to Plaintiff, EFCS stopped Plaintiff's salary and benefits on January 31, 2006.

Plaintiff filed a Complaint on March 22, 2006, alleging that EFCS, Dallas Dixon, and Rose Carroll discriminated against him based on his race and national origin and in retaliation for his complaints of racial discrimination, in violation of 42 U.S.C. § 1981, 42 U.S.C. § 1983, and the New Jersey Law Against Discrimination (NJ LAD). Plaintiff also alleged that Defendants had breached Plaintiff's employment contract with EFCS. On June 26, 2006, Plaintiff filed an Amended Complaint, alleging, under 42 U.S.C. § 1981 and 42 U.S.C. § 1983, that Defendants EFCS, Dallas Dixon, and Rose Carroll demoted and terminated him based on his race and

3

national origin and in retaliation for his complaints of racial discrimination, in violation of the

First and Fourteenth Amendments; he did not re-allege the counts of breach of contract and

violation of the LAD.  On July 20, 2006, the Individual Defendants filed a Motion to Dismiss for

Lack of Subject Matter Jurisdiction and for Failure to State a Claim, and asserted in the motion

that it should be considered a motion for summary judgment based on the material outside the

pleadings that they attached to the motion.  The Individual Defendants allege that the dispute

resolution provision in Plaintiff's employment contract precludes him from litigating his claims

against them in this court.  Plaintiff filed an opposition to the Individual Defendants' motion on

August 3, 2006, and the Individual Defendants filed a reply on August 21, 2006.

## II.      STANDARD OF REVIEW

The Court may grant a motion to dismiss for failure to state a claim upon which relief can

be granted under Rule 12(b)(6) if "accepting all well-pleaded allegations in the complaint as true,

and viewing them in the light most favorable to the plaintiff, plaintiff is not entitled to relief."

Oatway v. American Int'l Group, Inc., 325 F.3d 184, 187 (3d Cir. 2003) (quoting In re

Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1420 (3d Cir. 1997)).  The Court need not,

however, credit a plaintiff's "bald assertions" or "legal conclusions."  Morse v. Lower Merion

Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The focus of the Court's Rule 12(b)(6) analysis "is

not whether a plaintiff will ultimately prevail but whether he or she is entitled to offer evidence

to support the claims."  Oatway, 325 F.3d at 187.

When a party styles its motion as a motion to dismiss, or in the alternative, for summary

judgment under Rule 56, and attaches material outside the pleadings to its motion papers, a court

"has the discretion to accept the extraneous material and convert the motion into one for

4

summary judgment." <u>Gunson v. James</u>, 364 F. Supp. 2d 455, 460-61 (D.N.J.2005); <u>see also</u> Fed. R. Civ. P. 12(b).  However, a court may consider documents that are "integral to or explicitly relied upon in the complaint" without converting a motion to dismiss into a motion for summary judgment.  <u>In re Rockefeller Ctr. Props., Inc. Sec. Litig.</u>, 184 F.3d 280, 287 (3d Cir.1999) (emphasis omitted).

"[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.  Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied."  <u>Pension Benefit Guaranty Corp. v. White Consol. Indus., Inc.</u>, 998 F.2d 1192, 1196 (3d Cir.1993).  Consideration of these referenced documents will not require the conversion of a motion to dismiss to one for summary judgment under Fed. R. Civ. P. 12(b)(6).  Any further expansion beyond the pleading, however, may require conversion of the motion into one for summary judgment.  Fed. R. Civ. P. 12(b).  "The reason that a court must convert a motion to dismiss to a summary judgment motion if it considers extraneous evidence submitted by the defense is to afford the plaintiff an opportunity to respond.  When a complaint relies on a document, however, the plaintiff obviously is on notice of the contents of the document, and the need for a chance to refute evidence is greatly diminished."  <u>Id.</u> at 1196-97.  Even if a "[c]omplaint does not <u>explicitly</u> refer to or cite [a document]. . . the critical [issue] is whether the claims in the complaint are 'based' on an extrinsic document and not merely whether the extrinsic document was explicitly cited."  <u>Burlington Coat</u>, 114 F.3d at 1426 (emphasis in original) (citation omitted).

In the instant matter, both parties have attached material outside the pleadings to their

motion papers.[3]  However, in deciding the motion, the Court has considered Plaintiff's

employment contract, and none of the other documents referenced by the parties.  Because

Plaintiff's Amended Complaint explicitly references Plaintiff's employment contract, and

because Plaintiff's employment contract is integral to Plaintiff's claims, the Court finds that

consideration of Plaintiff's employment contract does not require conversion of the motion to

dismiss to one for summary judgment.

### III.    DISCUSSION

The Federal Arbitration Act (FAA) was enacted in 1925 to "reverse the longstanding

judicial hostility to arbitration agreements that had existed at English common law and had been

adopted by American courts, and to place arbitration agreements upon the same footing as other

contracts."  Gilmer v. Interstate/Johnson Lane Corporation, 500 U.S. 20, 24 (1991).  Section 2 of

the FAA provides that "[a] written provision in... a contract evidencing a transaction involving

commerce to settle by arbitration a controversy arising out of such contract... shall be valid,

irrevocable, and enforceable, save upon such grounds as exist at law or in equity for revocation

of any contract."  9 U.S.C. § 2.  In enacting the FAA, "Congress declared a national policy

favoring arbitration and withdrew the power of the states to require a judicial forum for the

resolution of claims which the contracting parties agreed to resolve by arbitration."  Southland

Corp. v. Keating, 465 U.S. 1, 10 (1984).  Moreover, the Supreme Court has held that the FAA

applies to arbitration agreements in employment contracts, and that Section 1 of the FAA

---

[3]The Individual Defendants attached Plaintiff's employment application to their motion, and attached a transcript of the negotiations for Plaintiff's employment contract to their reply brief, while Plaintiff attached to his opposition, Plaintiff's employment contract and his own certification.

exempts only contracts of employment of transportation workers.  Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 119 (2001).

While the FAA favors the enforcement of arbitration agreements, a court must first apply state contract principles to determine whether the parties have entered into an agreement to arbitrate, and the scope of any such agreement.  First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995).  However, as the New Jersey Supreme Court has noted, "consistent with federal law, a state cannot subject an arbitration agreement to more burdensome requirements than those governing the formation of other contracts."  Leodori v. CIGNA Corp., 814 A.2d 1098, 1104 (N.J. 2003).  Moreover, under the FAA, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983).

The New Jersey Supreme Court has set a high standard in determining whether an agreement to arbitrate is a valid waiver of judicial remedies.  In Garfinkel v. Morristown Obstetrics & Gynecology Associates, P.A., 773 A.2d 665, 672 (N.J. 2001), the New Jersey Supreme Court stated that while "we do not suggest that a party need refer specifically to the LAD or list every imaginable statute by name to effectuate a knowing and voluntary waiver of rights... a waiver-of-rights provision should at least provide that the employee agrees to arbitrate all statutory claims arising out of the employment relationship or its termination... It should also reflect the employee's general understanding of the type of claims included in the waiver, *e.g.*, workplace discrimination claims."  The Court in Garfinkel relied on the state's public policy to abolish workplace discrimination, as well as the general principle of contract interpretation that "a party's waiver of statutory rights 'must be clearly and unmistakably established, and

7

contractual language alleged to constitute a waiver will not be read expansively.'"  773 A.2d at 670 (quoting Red Bank Reg'l Educ. Ass'n v. Red Bank Reg'l High Sch. Bd. of Educ., 393 A.2d 267 (1978)).  The Court concluded that the employment contract provision at issue in Garfinkel, in which the plaintiff agreed to arbitrate "any controversy arising out of, or relating to, this Agreement or the breach thereof," failed to meet the standard for waiver of statutory remedies because it was silent with respect to such remedies.  Id. at 673.

In Leodori v. Cigna Corporation, 814 A.2d 1098, 1104 (N.J. 2003), the New Jersey Supreme Court affirmed the standard set in Garfinkel and stated that under New Jersey contract law, "a waiver-of-rights provision must reflect that an employee has agreed clearly and unambiguously to arbitrate the disputed claim."  The Court in Leodori found that this standard was easily met by the arbitration provision before it, which listed "numerous federal statutes by name as falling within its purview, in addition to 'any other federal, state, or local statute, regulation, or common-law doctrine, regarding employment discrimination, conditions of employment, or termination of employment.'"  Id.

In the present case, while the FAA applies to the arbitration agreement in Plaintiff's employment contract, the Court must look to state contract law to determine whether the parties entered into a valid agreement to arbitrate.  See First Options, 514 U.S. at 944.  Here, Plaintiff's agreement to arbitrate "all disputes" involving the Individual Defendants fails to meet the standard of a clear and unambiguous waiver of statutory remedies, as set forth by the New Jersey Supreme Court in Garfinkle and Leodori.  The dispute resolution provision in Plaintiff's contract makes no mention of statutory claims, nor does it reflect a general understanding of the type of claims being waived.  See Garfinkle, 773 A.2d at 672.  The Individual Defendants assert that

Plaintiff's agreement to arbitrate all disputes constitutes a waiver of statutory claims under

Martindale v. Sandvik, 800 A.2d 872 (N.J. 2002), in which the New Jersey Supreme Court held

that an arbitration clause that did not specifically mention statutory claims was nonetheless

sufficient to waive the plaintiff's statutory claims.  However, while the arbitration provision in

Martindale did state, broadly, that "all disputes relating to my employment with Sandvik or

termination thereof shall be decided by an arbitrator," the provision also included an agreement

"to waive my right to a jury trial in any action or proceeding related to my employment with

Sandvik."  Id. at 875.  Moreover, in finding that the arbitration clause in Martindale was a clear

and unambiguous waiver, the New Jersey Supreme Court relied on the provision's specific

waiver of the right to a jury trial.  Id. at 884.  Martindale is therefore consistent with the

requirement in Garfinkle that an arbitration agreement specifically mention a waiver of statutory

remedies and/or a jury trial.  Thus, the dispute resolution provision in the present case fails under

Martindale as well as Garfinkle, since the provision in Plaintiff's employment contract includes

neither a waiver of statutory remedies nor a waiver of the right to a jury trial.

In Gilbert v. Fox & Roach, LP, 2005 WL 2347121, *4 (D.N.J. 2005), the court addressed

whether a dispute resolution provision similar to the provision in Plaintiff's contract with EFCS

barred the plaintiff's claims of racial discrimination.  The contract provision in Gilbert stated that

"[d]isputes between Associate and another of Broker's sales associates, sales managers or

employees" were to be submitted to mediation, and that if mediation were unsuccessful, they

would be subject to binding arbitration before a panel consisting of three members of the

management team who were not involved in the dispute.  Id. at *1.  The provision further stated

that "disputes between Associate and Broker" were to be submitted to binding arbitration.  Id.

The court in <u>Gilbert</u> held that the dispute resolution provision was ambiguous under New Jersey contract law, as set forth in <u>Garfinkel</u>, because it used "no language addressing statutory remedies or Plaintiff's right to a jury."  <u>Id.</u> at *4.  In so holding, the court in <u>Gilbert</u> noted that "[t]he New Jersey Supreme Court's requirement of specific language to waive the right to sue appears to be in tension with the FAA's policy that 'a state cannot subject an arbitration agreement to more burdensome requirements than those governing the formation of other contracts.'"  2005 WL 2347121, at *3 n.1 (quoting <u>Leodori</u>, 814 A.2d at 1104).  The court in <u>Gilbert</u> further commented that "[t]his tension is also implicated by the fact that, while an arbitration agreement is, by its nature, a waiver of the right to seek a judicial forum, the United States Supreme Court nevertheless determined that doubts should be resolved in favor of arbitration."  <u>Id.</u> (citing <u>Cone Memorial Hosp.</u>, 460 U.S. at 24-25).  Nonetheless, the court in <u>Gilbert</u> felt compelled to follow the New Jersey law.

Similarly, this Court finds the analysis in <u>Gilbert</u> persuasive, and further agrees with the court's conclusion in <u>Gilbert</u> that "[i]n spite of these concerns... this Court is bound by New Jersey principles of contract interpretation, including New Jersey courts' determinations of what does and does not constitute ambiguity in a contract."  <u>Id.</u>  As in <u>Gilbert</u>, because the arbitration provision in Plaintiff's employment contract uses no language addressing statutory remedies or Plaintiff's right to a jury, the Court finds that its application to Plaintiff's statutory claims is ambiguous under New Jersey contract law.  Accordingly, the arbitration provision in Plaintiff's employment contract does not bar the present suit against the Individual Defendants, and their motion to dismiss is denied.

IV.    **CONCLUSION**

For the reasons set forth above, the Court finds that the arbitration clause in Plaintiff's employment contract does not waive his right to a judicial forum for his Section 1981 and 1983 claims against the Individual Defendants, and their motion to dismiss is therefore denied.

<u>/s/ Freda L. Wolfson</u>

_____

The Honorable Freda L. Wolfson
United States District Judge

Date:   January 29, 2007

11